# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:20-CV-098-DCK

| | |
|---|---|
| LISA HEAGGANS, | )<br>) |
| Plaintiff, | )<br>) |
| | ) **ORDER** |
| v. | )<br>) |
| KILOLO KIJAKAZI,[1]<br>Acting Commissioner of Social Security Administration, | )<br>)<br>)<br>) |
| Defendant. | )<br>)<br>) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 18) and Defendant's "Motion For Summary Judgment" (Document No. 22). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will direct that Plaintiff's "Motion For Summary Judgment" be denied; that Defendant's "Motion For Summary Judgment" be denied; and that the Commissioner's decision be vacated and this matter be remanded for further consideration.

## I. BACKGROUND

Plaintiff Lisa Heaggans ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On or about January 16, 2017 and January 24, 2017, respectively, Plaintiff filed applications for a

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew M. Saul as Defendant in this action.

period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning June 16, 2015.[2] (Transcript of the Record of Proceedings ("Tr.") 10). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on March 21, 2017, and again after reconsideration on August 11, 2017. (Tr. 174-191, 195-213). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 195, 204).

Plaintiff filed a timely written request for a hearing on September 10, 2017. (Tr. 10, 214-15). On May 1, 2019, Plaintiff appeared and testified at a hearing before Administrative Law Judge Clinton C. Hicks (the "ALJ"). (Tr. 7-23, 34-76). In addition, Ellen Levine, a vocational expert ("VE"), and Charles F. Hall, IV, Plaintiff's attorney for the hearing, appeared at the hearing. (Tr. 10).

---

[2] Notably, Plaintiff filed a previous application for disability insurance benefits and supplemental security income on December 10, 2012. (Tr. 10). Plaintiff's application was denied on June 15, 2015. Id. For this reason, Plaintiff's instant application alleges a disability onset date of June 16, 2015, as "*res judicata* applies with regard to the period through June 15, 2015" because an Administrative Law Judge denied her first application, the Appeals Council denied review, and Plaintiff did not appeal the denial of her claim to federal district court. Id.

2

The ALJ issued an unfavorable decision on July 5, 2019, denying Plaintiff's claim. (Tr. 7-23). On September 6, 2019, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on May 18, 2020. (Tr. 1-6, 7-23, 270-72). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on July 20, 2020 . (Document No. 1). The parties consented to Magistrate Judge Jurisdiction on February 2, 2021, and this case was reassigned to the undersigned as presiding judge on February 3, 2021. (Document No. 13).

Plaintiff's "Motion For Summary Judgment" (Document No. 18) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 19) were filed May 7, 2021; and the Commissioner's "Motion For Summary Judgment" (Document No. 22) and "Memorandum Of Law In Support Of Defendant's Motion For Summary Judgment" (Document No. 23) were filed August 6, 2021. Plaintiff filed "Plaintiff's Response to Defendant's Memorandum In Support Of Motion For Summary Judgment" (Document No. 24) on August 20, 2021.

The pending motions are now ripe for review and disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between June 16, 2015 and the date of the ALJ decision.[3] (Tr. 11). To establish entitlement to benefits, Plaintiff has the burden of proving

---

[3] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

    (1)    whether claimant is engaged in substantial gainful activity - if yes, not disabled;

    (2)    whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

    (3)    whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

    (4)    whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

    (5)    whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 21-22).

---

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since June 16, 2015, the alleged disability onset date. (Tr. 13). At the second step, the ALJ found that degenerative disc disease; status post T6-L3 Harrington rod fixation with adjacent level scoliosis; left foot neuropathy; fibromyalgia; and headaches were severe impairments.[4] Id. At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 15).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work activity, with the following limitations:

> [F]requent pushing and pulling with the bilateral upper extremities; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no climbing of ropes, ladders, or scaffolds; no concentrated exposure to hazards; sit/stand option that would allow her to change position once per hour for five minutes at a time; simple, routine, repetitive tasks of unskilled work; no complex decision-making, no crisis situations, no constant changes in routine; occasional interaction with the public, supervisors, and coworkers; can stay on task for two hours at a time.

(Tr. 15-16). In making this finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform her past relevant work as a receptionist, unit clerk, pharmacy technician, or cashier. (Tr. 21). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education,

---

[4] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

6

work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 21-22). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a laundry folder, inspector and hand packager, and shipping and receiving weigher. (Tr. 22). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between June 16, 2015, and the date of his decision, July 5, 2019. (Tr. 22-23).

Plaintiff on appeal to this Court makes the following assignments of error: (1) "[t]he ALJ failed to properly analyze Listing 1.04A for Lumbar DDD [degenerative disc disease] as required by *Radford*;" and (2) "[t]he ALJ erred by failing to explain why non-mechanical application of the grids was not chosen pursuant to 20 C.F.R. § 404.1563(b)." (Document No. 19, pp. 4, 8). The undersigned will discuss each of these contentions in turn.

A.   **Assignment of Error # 1**

In the first assignment of error, Plaintiff argues that the ALJ "failed to properly analyze Listing 1.04A for Lumbar DDD as required by *Radford*." Id. at p. 4 (citing Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). Plaintiff contends that "[d]espite the presence of lumbar DDD and all the signs and symptoms required by Listing 1.04A, the ALJ found that Listing 1.04A was not met or medically equaled." Id. The error, Plaintiff contends, is that although "the ALJ correctly concludes that there is evidence of most of the criteria of Listing 1.04A," "the ALJ was mistaken as to the complete absence of evidence of motor loss and sensory loss or reflex loss." Id. at p. 5. Plaintiff goes on to cite various points in the record where "there is significant evidence of the contested signs and symptoms." Id. at pp. 5-6. The legally correct approach that the ALJ should have taken, Plaintiff argues, is to discuss "which evidence the ALJ found credible and why with specific application of the relevant listing criteria to the record evidence." Id. at p. 6. "[R]emand

is necessary," Plaintiff contends, "so that the Commissioner may examine and evaluate the evidence of the contested signs and symptoms and determine whether Listing 1.04A for the lumbar spine is met or medically equaled." Id. at pp. 7-8.

Defendant, by contrast, argues that "the record does not contain adequate evidence confirming that the requirements of Listing 1.04(A) were satisfied." (Document No. 23, p. 5). Indeed, Defendant argues that the ALJ did determine that "evidence showed…some of the elements of 1.04A" were met, but "there was no evidence of motor loss accompanied by sensory or reflex loss." Id. at p. 7. Furthermore, Defendant argues that "[t]he ALJ provided additional support for his determination that Plaintiff's impairments did not satisfy Listing 1.04 in the context of discussing the medical evidence in subsequent portions of the ALJ's decision." Id.

According to the Fourth Circuit, "[w]hen 'there is ample evidence in the record to support a determination' that a claimant's impairment meets or equals one of the listed impairments, [] the ALJ must 'identif[y] the relevant listed impairments' and 'compare[] each of the listed criteria to the evidence of [the claimant's] symptoms.'" Bates v. Berryhill, 726 F. App'x 959, 960 (4th Cir. 2018) (quoting Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986)). An ALJ's analysis at Step Three is "insufficient" where he or she "summarily conclude[s] that [claimant's] impairment did not meet or equal a listed impairment," but then fails to provide further explanation supporting the conclusion. Radford, 734 F.3d at 295. Moreover, in order to "show that [an] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Listing 1.04A requires that a claimant show

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine,

8

> motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A. Moreover, there "is not a rigid requirement that the ALJ refer to every piece of evidence in his decision." Pitts v. Colvin, 2014 WL 12599801, at *7 (W.D.N.C. Sept. 26, 2014) (internal quotations and citations omitted). In conducting a listing analysis at Step Three, the ALJ decision need not be "a model of clarity[] regarding application of the criteria" of the listing. Id.

Here, the undersigned finds that while the ALJ's analysis may not have been perfect in terms of matching the criteria to Ms. Heaggans' symptoms, it was sufficient to survive remand. Indeed, where the record contains "conflicting evidence" and has "depth and ambivalence," so long as the ALJ engages in analysis that contains a "full explanation" of his or her conclusion, that is sufficient to survive remand. Radford, 734 F.3d at 296. Indeed, is it not "the province of the district court…to engage in these exercises [of weighing the conflicting evidence] in the first instance." Id.

The ALJ, as Defendant correctly states, "determined that while the evidence showed *some* of the elements of 1.04A [were met], there was no evidence of motor loss accompanied by sensory or reflex loss." (Document No. 23, p. 7). Specifically, the ALJ finds that "[a] CT myelogram of the lumbar spine performed in May 2014 showed some lateral recess stenosis secondary to disc bulge and facet arthropathy impinging on the L4 nerve root." (Tr. 15 (citing Tr. 391-92)). On account of this evidence in the record, the ALJ finds that "[t]he clinical findings and imaging tests…show evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, and positive straight-leg raising." (Tr. 15). However, the ALJ did not find that Plaintiff's symptoms demonstrated "motor loss…accompanied by sensory

9

or reflex loss." Id. Although the ALJ does not specifically cite to evidence supporting that proposition, there is good reason. The ALJ *did* cite to evidence supporting his finding that some of the listing's criteria *were* met. However, where the criteria were *not* met (and thus there was logically no evidence to support a finding that was not made), the ALJ did not specifically cite to the record. Even though, as in Pitts, the ALJ's decision might not have been a "model of clarity," it was legally sufficient here. 2014 WL 12499801, at *7. The ALJ does not need to cite to each piece of evidence in the record that aided him in reaching his finding. Id.

Furthermore, the undersigned finds that while the ALJ might not have described his reasoning in as clear a fashion *in the Step Three section* of his decision as a reviewing court may have liked, that lack of perfect clarity does not warrant remand. Indeed, Defendant highlights that "[t]he ALJ provided additional support for his determination that Plaintiff's impairments did not satisfy Listing 1.04 in the context of discussing the medical evidence in subsequent portions of the ALJ's decision." (Document No. 23, p. 7); see Mitchell v. Berryhill, 2018 WL 1567360, at *3 (W.D.N.C. Mar. 30, 2018) (suggesting that if the ALJ discusses and opines upon the Plaintiff's medical evidence regarding a particular physical condition later in the decision, that is sufficient to save a more cursory explanation in the Step Three section of the decision); Jeske v. Saul, 955 F.3d 583, 590 (7th Cir. 2020) ("the ALJ's more thorough discussion—although located with the discussion of Jeske's RFC—explained what the evidence revealed about Jeske's condition and symptoms").

Plaintiff attempts in her brief to cite instances in which the medical record demonstrates her left leg weakness and abnormal sensation. See (Document No. 19, pp. 5-6). But, the ALJ does not ignore that evidence. Indeed, the ALJ notes in his RFC analysis that the medical record shows that "claimant has tenderness and limited range of motion of the spine, as well as abnormal

10

sensation, but normal gait, and station, normal motor, and normal coordination." (Tr. 18 (citing Tr. 655, 673, 678, 682, 687, 692, 700, 704, 714, 723, 731, 736, 744, 770, 788, 795, 938)). He also notes that "primary care records since 2015 indicate that the claimant has spasms at times, but her lumbar spine is nontender to palpation on exams," and she has "normal musculoskeletal exams, normal motor exams, and normal balance." (Tr. 19 (citing Tr. 442, 473, 480-81)). Clearly, the ALJ considered Plaintiff's medical evidence, and though Plaintiff may not agree with his assessment of such evidence, it is not the role of the court to reweigh the evidence – even if the Court would ultimately conclude that Plaintiff *did* meet Listing 1.04A.

Ultimately, it is Plaintiff's burden to prove that she was disabled at Step Three – and it remains the Plaintiff's burden to prove disability until Step Five, at which point the burden shifts to Defendant to prove that Plaintiff was not disabled. Pass, 65 F.3d at 1203. Plaintiff has failed to satisfy her burden. The undersigned finds that substantial evidence supports the ALJ's decision at Step Three.

**B.     Assignment of Error # 2**

Next, Plaintiff argues that the ALJ "failed to explain his choice of age category when applying the grids despite the presence of a borderline age situation." (Document No. 19, p. 8). Plaintiff explains that "though an ALJ is not required to apply the grids non-mechanically in a borderline situation, the ALJ is required to at least consider non-mechanical application in light of the overall factors of the case." Id. And, Plaintiff contends, the "SSA has noted that this borderline situation generally exists up to 6 months before attainment of the specified age." Id. Apparently, Ms. Heaggans "was less than 6 months away from attaining age 55 at the time of the decision." Id. Moreover, she "was limited to a reduced range of unskilled light work." Id. Nonetheless, "the

11

ALJ did not consider the application of the more favorable [in terms of a greater chance of finding that Plaintiff was disabled] grid rule 202.06 despite her close proximity to this age category." Id.

Plaintiff also suggests that "application of the grid rules" should have been "non-mechanical[]" in this case because Plaintiff had "an additional vocational adversity" – "the need for latitude of posture, commonly noted to be a 'sit/stand option.'" Id. at p. 9. According to Plaintiff, the regulations suggest that where a Plaintiff has RFC limitations that "adversely affect" a claimant's unskilled occupational capacity, the borderline age analysis should be considered. Id. (citations omitted).

In response, Defendant argues that the ALJ made no error with respect to the application of the grids and consideration of Plaintiff's age. Defendant contends that "[a]lthough Plaintiff is considered to meet the regulatory definition of 'a few months,' that does not mean that the ALJ was required to specifically discuss the higher age category or to actually apply it and find Plaintiff disabled." (Document No. 23, p. 9). Defendant cites the regulations, arguing that although they "require that the adjudicator '*consider* whether to use the older age category,'" there is no requirement that "the ALJ [] specifically document that consideration in the written decision." Id. (citing 20 C.F.R. §§ 404.1563(b), 416.963(b) (emphasis added). Plaintiff firmly disagrees with Defendant's argument that no written explanation of the decision-making process behind the age category choice is required. (Document No. 24, p. 1). Indeed, she argues that "SSA's internal policies state that the ALJ will explain the borderline age situation and conclusions." Id.

Finally, although Defendant does not discuss the point in detail, she does argue that "Plaintiff fails to demonstrate that she presents sufficient additional vocational adversities that warrant application of the higher age category." (Document No. 23, p. 10). In her responsive brief, Plaintiff takes issue with the notion that she has any burden to demonstrate additional

12

vocational adversities. Instead, she argues, the ALJ must "consider the overall impact of all the factors, including RFC, age, education, and work experience." (Document No. 24, p. 2) (citing Gregory v. Kijakazi, 2021 WL 3415183, at *6 (E.D.N.C. July 12, 2021) ("newer internal guidelines do not require the claimant to show additional vocational adversities")).

As previously stated, the Commissioner carries the burden of demonstrating at Step Five that work is available in the national economy that Plaintiff can perform. Pass, 65 F.3d at 1203. "The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (Grids)…[t]he Grids are published tables that take administrative notice of the number of unskilled jobs at each exertional level in the national economy." Gregory v. Kijakazi, 2021 WL 3415183, at *3 (E.D.N.C. July 12, 2021). But, when as here, a claimant "suffers [from] an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely [solely] on the Grids and must [also] produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant." Id. Indeed, "[i]n such circumstances, the ALJ must consider all relevant facts, using the grid tables to provide *framework* and guidance to the ALJ." Id. (emphasis added) (citations omitted).

The Grids provide three age categories: (1) younger individuals – people under age 50; (2) people "closely approaching advanced age" – ages 50-54; and (3) people "of advanced age" – ages 55 or older. 20 C.F.R. §§ 404.1563(c)-(e). And, in "borderline" situations, when a person is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [he or she is] disabled," the Social Security Administration "will consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case." 20 C.F.R. § 416.963(b). "[G]enerally, claimants

who are within six months of the next age category are routinely considered borderline." Gregory, 2021 WL 3415183, at *4.

The Fourth Circuit has not yet spoken to what is required of an ALJ in his or her decision – does he or she need to actually articulate the rationale motivating his "consideration" of the older age category, or do such reasons need not be stated in writing? Id. at *5. Still, "several district courts within the Fourth Circuit have required that [the] ALJ [] provide some analysis and make express findings in borderline age situations." Id. (collecting cases); see also Arnett v. Berryhill, 2017 WL 1659060, at *4 (W.D.N.C. Apr. 4, 2017) ("boilerplate language in a decision stating the claimant's birthday, the claimant's age when he or she filed the application, and a citation to 20 C.F.R. § 416.963 is insufficient to satisfy the ALJ's requirement to consider a borderline age category…The Court agrees with those courts that have held that an ALJ must, at a minimum, acknowledge a claimant's borderline age category and provide this Court with sufficient reasoning to conduct meaningful review"); Brown v. Colvin, 2014 WL 1658751, at *4 (W.D.N.C. Apr. 25, 2014); Mitchell v. Astrue, 2011 WL 5037134, at *3-*4 (W.D.N.C. Oct. 24, 2011).[5]

Further supporting the position that *some* minimum explanation of the ALJ's thought process in a borderline age situation is prudent is the indication in an internal agency manual that an "ALJ will explain in the decision that he or she considered the borderline age situation, state whether he or she applied the higher age category or the chronological age, and note the specific

---

[5] In Williford v. Colvin, although the undersigned only recommended remand as to Plaintiff's second assignment of error rather than on the borderline age issue, the undersigned at least suggested that the ALJ should substantiate and "further clarify" the discussion of the borderline age issue on remand. 2015 WL 7730978, at *5 (W.D.N.C. Oct. 28, 2015) ("because the undersigned [] recommend[ed] remand to address [a separate assignment of error], the undersigned suggest[ed] that on remand the ALJ further clarify the consideration given to Plaintiff's age"). Furthermore, as will subsequently be explained in this Order, the Social Security Administration amended its internal guidance after the Williford Memorandum and Recommendation was issued, now clearly stating that ALJs should explicitly discuss the borderline age issue where one arises. See Trevino v. Berryhill, 2018 WL 1629211, at *10, n.10 (S.D. Tex. Mar. 16, 2018) ("the HALLEX provision regarding the borderline age situation has recently been amended[] [a]s of March 25, 2016").

14

factor(s) he or she considered." HALLEX I-2-2-42, 2016 WL 1167001, at *3 (Mar. 25, 2016). Although this internal Social Security Administration manual likely does not have "force of law," it at least tips the balance on a question that is a close call without guidance from the Fourth Circuit on borderline age consideration at this point. Rogers v. Berryhill, 2018 WL 1308952, at *4 (W.D.N.C. Mar. 13, 2018).

In this case, although it is a close call, the undersigned will direct that the case be remanded on this issue so that the ALJ can provide further explanation for his choice of age category. The ALJ did not acknowledge that Plaintiff was in a borderline age situation. Indeed, all that the ALJ recited was Plaintiff's birthday, her age, and the age category that she was currently in – "an individual closely approaching advanced age." (Tr. 21). He failed to recognize that at the time of his decision, Plaintiff was just over five months from turning 55 – which would have placed her in the older age category, thus presenting a borderline age situation. His analysis is devoid of any recognition of this fact. Although the ALJ relied in part upon the testimony of a vocational expert at Step Five, remand is nevertheless appropriate because there is ample support from district courts in the Fourth Circuit for requiring that ALJs "[s]how [their] work." Patterson v. Comm'r of Soc. Sec'y Admin., 846 F.3d 656, 663 (4th Cir. 2017); see infra p. 14. The undersigned will remand this case for further explanation by the ALJ of his choice of age category given the borderline age situation.[6]

---

[6] The undersigned will not address Defendant's argument that Plaintiff did not show additional vocational adversities that would justify application of the older age category. See (Document No. 9, p. 10). Remand in this case is appropriate because the ALJ failed to explain *at all* his choice of age category or even acknowledge the borderline age situation.

15

## IV.  CONCLUSION

Based on the analysis above, the undersigned finds that this matter should be remanded for further consideration.  The undersigned finds that there is not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence does not support the Commissioner's decision.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005).  As such, the undersigned will direct that the Commissioner's decision be vacated.

**IT IS, THEREFORE, ORDERED** that:  Plaintiff's "Motion For Summary Judgment" (Document No. 18) is **DENIED**;  the "Defendant's Motion For Summary Judgment" (Document No. 22) is **DENIED**;  and the Commissioner's determination is **VACATED**.  This matter shall be **REMANDED** for reconsideration consistent with this Order.

**SO ORDERED**.

Signed: May 20, 2022

David C. Keesler
United States Magistrate Judge